**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 97-10825**
_____

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**ALBERT PALOMO,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Northern District of Texas**
**(4:97-CR-6-1-A)**
_____

**October 15, 1998**

Before JOLLY, BARKSDALE, and BENAVIDES, Circuit Judges.

PER CURIAM:[*]

Albert Palomo appeals his conviction for being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1), challenging, _inter alia_, the district court's comments, during voir dire, regarding Texas community property law, in conjunction with the potential jurors (venire) being questioned by defense counsel about ownership of firearms. We **AFFIRM**.

---

[*] Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Palomo, arrested in March 1996, was convicted approximately 13 months later. The district court sentenced him to 210 months imprisonment, followed by a five-year term of supervised release.

II.

Palomo contends that the district court reversibly erred by commenting on Texas community property law during voir dire and by later refusing to cure the claimed error by including Palomo's requested instruction in the jury charge; that it erroneously instructed the jury on the interstate commerce element of the offense; and that the felon in possession of a firearm statute is unconstitutional, the indictment defective, and the evidence insufficient, because the statute did not require the Government to allege and prove a substantial effect on interstate commerce.

A.

In March 1996, Fort Worth, Texas, police officers stopped a car driven by Palomo, and discovered that the passenger, Melissa Monroe (Palomo's common-law wife), was sitting on a firearm. During voir dire for this one-day trial, defense counsel asked if any members of the venire owned handguns; two responded that their spouses did. The district court commented:

> This is a community property state, and everything one of you owns, the other owns, unless you had it before you got married or inherited it....

Defense counsel objected and moved for a mistrial, stating that

> the evidence in this case will show that Melissa Monroe and Albert Palomo were in a car together.... The evidence will also show they

were married. The defense in this case is that the gun belonged to and was in the sole possession of Melissa Monroe. What [the court] just said makes my client guilty even under that theory.

The court overruled the objection and denied a mistrial, explaining that it had to instruct the venire on Texas community property law so that they could accurately answer defense counsel's question. Counsel requested that the court also then instruct that "it's not sufficient for the government to prove that either spouse owned a weapon in order to prove that my client possessed the weapon"; the court responded that it would handle the matter later.

Officer Burnette testified that, as he was walking toward Palomo's vehicle after stopping it, he observed Palomo reach under the front seat, reach over to a female passenger, and place something under her left leg; that he saw the butt of a gun sticking out from the passenger's left leg; and that Palomo later stated, "I should have shot you when I got the chance". Officer Clowers testified that he also observed Palomo reaching across the seat, and that it looked as if he were placing something under the passenger's left leg.

Neither Palomo nor Monroe testified. But, Palomo presented evidence that the firearm was sold to Monroe several years prior to Palomo's arrest; and that Monroe had pawned the weapon four times. Monroe's sister testified that, when Palomo and Monroe left her home on the evening of Palomo's arrest, Monroe had the firearm in her pocket; and that she (Monroe's sister) did not think Palomo knew that Monroe had a gun.

Later in the day, at the close of the evidence, Palomo's counsel requested that the court instruct the jury that Texas community property law was irrelevant to Palomo's guilt or innocence. The court responded that such an instruction did not seem necessary, but allowed counsel to submit a proposed instruction. Palomo requested the following:

> I had informed you during Voir Dire that Texas is a community property state, and that under Texas law if one spouse owns a gun, so does the other. You have heard evidence that the defendant and Melissa Monroe may have had a common law marital relationship. Whether or not you find that the defendant and Melissa Monroe had this common law relationship, their marital status, whatever it might have been, has no bearing on the outcome of this case. The community property laws of the State of Texas are part of the Texas Family Code to establish certain rights and privileges for Married people in state civil matters, such as divorces. This is a Federal Criminal case. The issue is whether the defendant possessed the weapon on or about March 22, 199[6]. His legal status as a spouse of Melissa Monroe is not evidence that he possessed the weapon in this case, and must not be relied upon by you as proof that he did.

Palomo's counsel agreed with the court that the first sentence of the proposed instruction would aggravate the problem. The court agreed to give the second and third sentences, but refused to give the remainder, stating that it was not an accurate statement of the law. Accordingly, the jury was instructed as follows:

> You have heard evidence that the defendant and Melissa Monroe may have had a common-law marital relationship. Whether or not you find that the defendant and Melissa Monroe had this common-law relationship, their marital status, whatever it might have been, has no bearing on the outcome of this case.

- 4 -

The jury was instructed that, to find Palomo guilty of violating 18 U.S.C. § 922(g)(1), the Government was required to prove, beyond a reasonable doubt:

> First, that [Palomo] knowingly possessed a firearm, as charged.

> Second, that before [Palomo] possessed the firearm, [Palomo] had been convicted of a crime punishable by imprisonment for a term in excess of one year; that is, a felony offense. The government and [Palomo] have stipulated that this second element is true.

> Third, that the possession of the firearm was in or affecting interstate commerce.

Knowing possession was defined as follows:

> The word "knowingly," as that word is used from time to time in these instructions, means that the act was done voluntarily and intentionally, not because of mistake or accident.

> Possession, as that term is used in this case, may be of two kinds: actual possession and constructive possession. A person who knowingly has direct physical control over a thing, at a given time, is then in actual possession of it.

> A person who, although not in actual possession, knowingly has both the power and the intention, at a given time, to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it.

> Possession may be sole or joint. If one person alone has actual or constructive possession of a thing, possession is sole. If two or more persons share actual or constructive possession of a thing, possession is joint.

During deliberations, the jury asked the court to "provide ... the definition of both kinds of possession in writing, since we

- 5 -

need clarification on constructive possession in particular". In response, the court repeated its instructions on possession. The request by Palomo's counsel that the jury also be instructed again that the possession must be "knowing" was denied.

Palomo contends that the "knowing possession" element was removed from the jury's consideration when the court earlier told the venire that Texas community property law imputed one spouse's ownership of items to the other spouse; and that the court failed to cure the error by giving the requested instruction. The jury's note asking for clarification on constructive possession demonstrates, according to Palomo, that the comments on Texas community property law affected the verdict.

It goes without saying that "a trial judge has broad discretion in the conduct of voir dire". *United States v. Garcia*, 86 F.3d 394, 401 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 752 (1997) (internal quotation marks and citation omitted). "We will only overturn a conviction based upon the scope and conduct of voir dire if we find both that the trial court abused its discretion and that the rights of the accused have been prejudiced by that abuse." *Id*.

In reviewing jury instructions, we "determine whether the court's charge, as a whole, is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them". *United States v. Allibhai*, 939 F.2d 244, 251 (5th Cir. 1991) (internal quotation marks and citation omitted), *cert. denied*, 502 U.S. 1072 (1992).

"A trial judge is given substantial latitude in tailoring instructions so long as they fairly and adequately cover the issues presented." *Id*.

A party appealing the refusal to give a requested instruction must show that it "(1) is substantively correct; (2) was not substantially covered in the charge actually delivered to the jury; and (3) concerns an important point in the trial so that the failure to give it seriously impairs the defendant's ability to effectively present a given defense". *United States v. Pipkin*, 114 F.3d 528, 535 (5th Cir. 1997) (internal quotation marks and citations omitted). "Refusal to give a particular instruction is reviewed only for abuse of discretion." *United States v. Lokey*, 945 F.2d 825, 839 (5th Cir. 1991).

The court did not abuse its discretion by commenting on Texas community property law. Palomo's counsel raised the issue of handgun ownership while questioning the venire. Two women having stated that their husbands owned handguns, the court's comment was an appropriate clarification, so that the venire could accurately respond to Palomo's counsel's inquiry.

Even assuming the remarks were improper, they were cured by the instruction, given at Palomo's request, that any relationship between Monroe and Palomo had "no bearing on the outcome of this case". The court's refusal to give the remainder of the requested instruction was not an abuse of discretion, because the charge, as a whole, including the instructions on knowing possession, adequately instructed on the applicable law.

B.

Next, Palomo asserts that, by instructing that a firearm's movement from one State to another satisfies the interstate commerce element of the offense, the district court effectively removed that element from the jury's consideration, in violation of *United States v. Gaudin*, 515 U.S. 506, 522-23 (1995) ("The Constitution gives a criminal defendant the right to have a jury determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged").

With respect to the interstate commerce element, the court instructed:

> "Interstate commerce" means ... commerce or travel between one state, territory, or possession of the United States and another state, territory, or possession of the United States, including the District of Columbia.
>
> Commerce includes travel, trade, transportation, and communication.

The court further instructed:

> If you believe beyond a reasonable doubt that before [Palomo] possessed the firearm, if he did possess it, it had traveled at some time from one state to another, then you are instructed that the interstate commerce element ... has been satisfied.

Palomo objected on the grounds that the instruction removed the interstate commerce element from the jury's consideration, in violation of *Gaudin*; and that it violated *United States v. Lopez*, 514 U.S. 549 (1995), because it did not require the jury to find a "substantial effect" on interstate commerce.

- 8 -

Palomo acknowledges that our court has held that a similar jury instruction on the interstate commerce element in a Hobbs Act prosecution did not violate *Gaudin*. *See* *United States v. Parker*, 104 F.3d 72, 73 (5th Cir.) (en banc), *cert. denied*, ___ U.S. ___, 117 S. Ct. 1720 (1997). The instruction approved in *Parker* stated that the interstate commerce element was satisfied if the jury believed the Government's evidence that cash proceeds obtained from the operations of the store robbed by the defendant "were routinely wired or electronically transferred from the State of Texas for deposit in a bank in another state". *United States v. Parker*, 73 F.3d 48, 50 (5th Cir. 1996), *aff'd in part & rev'd in part*, 104 F.3d 72 (5th Cir.) (en banc), *cert. denied*, ___ U.S. ___, 117 S. Ct. 1720 (1997). *See also* *United States v. Miles*, 122 F.3d 235, 239 (5th Cir. 1997) (*Gaudin* not violated by instruction that interstate commerce element was satisfied if jury believed Government's evidence that stores robbed by defendants "bought and sold merchandise that had traveled from another state to Texas, or that the robberies affected sales by the stores of such merchandise, or that the money proceeds from these stores moved in interstate commerce, or that these stores served customers who travel in interstate commerce"), *cert. denied*, ___ U.S. ___, 118 S. Ct. 1201 (1998); *United States v. Hebert*, 131 F.3d 514, 521-22 & n.6 (5th Cir. 1997) (district court did not violate *Gaudin* by instructing that "the necessary effect on interstate commerce has been shown" if jury found Government proved that "the entities cited in the Hobbs Act counts actively engaged in interstate

- 9 -

commerce, and their assets were depleted by defendant's acts of robbery, thereby curtailing their potential as purchasers of goods in the stream of interstate commerce"), *cert. denied*, ___ U.S. ___, 118 S. Ct. 1571 (1998).

Under the analyses used in **Parker**, **Miles**, and **Hebert**, the instruction, which equated the movement of the firearm from one State to another with the interstate commerce element, did not violate **Gaudin**. *See* **Hebert**, 131 F.3d at 522 n.6.

## C.

The indictment alleged that Palomo had possessed the firearm "in or affecting interstate commerce"; and the Government introduced evidence that the firearm had traveled in interstate commerce. Consistent with his claim in part II.B., Palomo maintains that, under **Lopez**, § 922(g) is unconstitutional because it does not require showing a "substantial effect" on interstate commerce; that the indictment is deficient because it fails to allege such an effect; and that the evidence was insufficient to establish a violation of the statute, because the mere movement of a firearm from one State to another, at some undetermined time in the past, is insufficient to prove a substantial effect on interstate commerce.

Palomo concedes that these claims are foreclosed by circuit precedent; they are raised only to preserve them. "The 'in or affecting commerce' element [of § 922(g)(1)] can be satisfied if the firearm possessed by a convicted felon had previously traveled in interstate commerce." **United States v. Rawls**, 85 F.3d 240, 242-

- 10 -

43 (5th Cir. 1996).  *See also **United States v. Kuban***, 94 F.3d 971,

973 (5th Cir. 1996), *cert. denied*, ___ U.S. ___, 117 S. Ct. 716

(1997); ***United States v. Dickey***, 102 F.3d 157, 163 (5th Cir. 1996).

## III.

For the foregoing reasons, the judgment is

***AFFIRMED.***